UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| AMIRJON RAHMONKULOV, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:26-cv-00445-JPH-MKK |
| ) | |
| BRANDON CROWLEY Clay County Jail ) | |
| Commander, ) | |
| BRISON SWEARINGEN Clay County ) | |
| Sheriff, ) | |
| SAMUEL OLSON ICE Chicago Field Office ) | |
| Director for Detention and Removal ) | |
| Operations, ) | |
| TODD LYONS Acting Director of ) | |
| Immigration and Customs Enforcement, ) | |
| MARKWAYNE MULLIN Secretary of the ) | |
| Department of Homeland Security, ) | |
| TODD BLANCHE Acting Attorney General ) | |
| of the United States, ) | |
| ) | |
| Respondents. ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Noncitizen Amirjon Rahmonkulov is detained at the Clay County Jail on behalf of U.S. Immigration and Customs Enforcement (ICE). Mr. Rahmonkulov seeks a writ of habeas corpus requiring Respondents to release him from custody.

For the reasons explained below, the Court grants the petition to the extent that it orders the respondents to either afford Mr. Rahmonkulov a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations or release him from custody under reasonable conditions of supervision.

1

## I. Facts

Mr. Rahmonkulov is a citizen of Uzbekistan. Dkt. 8-1 at 5. He entered the United States in March 2023 without having been paroled or admitted. *Id.* at 6. On March 11, 2023, a Notice to Appear was issued indicating that removal proceedings had been initiated against him. *Id.* at 1. He was released on his own recognizance. *Id.* at 6.

On June 22, 2026, Indiana State Police conducted a traffic stop and took Mr. Rahmonkulov into custody. *Id.* Mr. Rahmonkulov was arrested pursuant to an I-200 administrative warrant, which "command[s]" that he be arrested pursuant to 8 U.S.C. § 1226. *Id.* at 4. He was taken into ICE custody and is currently detained at the Clay County Jail. There is no indication that he has received a bond hearing.

The Notice to Appear charges Mr. Rahmonkulov with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* at 1. The "arriving alien" checkbox is unmarked. *Id.*

## II. Discussion

Mr. Rahmonkulov claims that his detention violates the Immigration and Nationality Act (INA) and the Fifth Amendment's due process clause. He argues that he must be immediately released from detention or, in the alternative, be provided a bond hearing at which the Government bears the burden of justifying his continued detention by clear and convincing evidence. Respondents argue

that the INA requires Mr. Rahmonkulov's detention pursuant to 8 U.S.C. § 1225(b)(2)(A) and that Due Process is not violated by his continued detention.

Mr. Rahmonkulov's detention is governed by § 1226(a) and is unlawful because he has not been afforded a bond hearing. Because Mr. Rahmonkulov is entitled to habeas corpus relief on these grounds, the Court does not reach the merits of Petitioner's other arguments.

## A.    8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. §§ 1226 and 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

      (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole[.]

An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for

admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**B.    Mr. Rahmonkulov Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

The record reflects that Mr. Rahmonkulov is eligible for a bond hearing under § 1226(a).

The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Mr. Rahmonkulov who have lived in the interior of the United States for years. *See Alejandro v. Olson,* 817 F. Supp. 3d 672, 677 (S.D. Ind. 2025); *Jackson Rizo v. Swearingen,* Case No. 2:26-cv-00026-JPH-MKK (S.D. Ind. January 23, 2026); *Corzo Martinez v. Olson et al.,* No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. January 10, 2026). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a

recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *See Alejandro*, 817 F. Supp. 3d at 677.[1]

In December 2025, the Seventh Circuit issued an opinion in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (*Castañon-Nava I*). There, the Seventh Circuit determined that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. The Court has relied on that opinion as persuasive authority[2] and continues to do so after the Seventh Circuit's most recent opinion in *Castañon-Nava. See* 175 F.4th 828 (7th Cir. 2026) (*Castañon-Nava II*).

Respondents cite a recent Fifth Circuit Court of Appeals decision, which upheld the government's interpretation of § 1225(b)(2)(A) in finding that "seeking admission" is a permissible redundancy for "applicant for admission." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) ("The Supreme Court has observed that 'redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of

---

[1] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which those statutes apply as set forth in *Alejandro*, 817 F. Supp. 3d 672, *Jackson Rizo v. Swearingen*, No. 2:26-cv-00026-JPH-MKK (S.D. Ind. Jan. 23, 2026), *Corzo Martinez v. Olson et al.*, No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. Jan. 10, 2026).

[2] *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F.4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of law, and any adjustment to the factual record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication' . . . . That seems doubly true where the ordinary meaning of the terms involved overlap. Because being an applicant ordinarily entails seeking something, it seems natural to use the words somewhat interchangeably.") (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)). Even if the terms refer to different things, the Fifth Circuit found that petitioners such as Mr. Rahmonkulov can be said to be "seeking admission" even though they have resided within the country for years and are not affirmatively seeking to enter the United States. *Id.*

Respondents also cite a recent Eighth Circuit case, *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026)). The *Avila* court held that the meanings of "applicant for admission" and "seeking admission" and the grammatical structure of 8 U.S.C. § 1225(b)(2)(A) show that "in the context of the statute the two phrases are synonymous." *Id.* at 1135.

Countering those circuit decisions, the Second Circuit recently decided *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). There, the Second Circuit rejected the government's argument and adopted the reasoning set forth in *Castañon-Nava I*: "Although divided panels in two other circuits have agreed with the government, . . . we respectfully find the statutory analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive." *Id.* at 75.  The court went on to conclude that "because Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to Petitioner." *Id.* at 74. The Eleventh

7

Circuit recently joined the Second Circuit in rejecting the government's expansive interpretation of § 1225. *Hernandez Alvarez v. Warden,* 175 F.4th1258 (11th Cir. 2026).[3] The Sixth and Tenth Circuits recently came to similar conclusions. *See Lopez-Campos v. Raycraft,* 175 F.4th 713 (6th Cir. 2026);[4] *Santillan Quiroz v. Mullin,* No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026).[5]

This Court is not convinced that the Seventh Circuit will eventually join the *Buenrostro-Mendez* and *Avila* side of the circuit split. So, in line with *Castañon-Nava I* and now *Cunha, Hernandez Alvarez, Lopez-Campos,* and *Santillan Quiroz,* the Court continues to rely on its previous conclusion that § 1225(b)(2)(A) does not apply to undocumented aliens like Mr. Rahmonkulov who have lived in the interior of the United States and were arrested on an administrative warrant "command[ing]" that he be arrested pursuant to 8 U.S.C. § 1226. Dkt. 8-1 at 6.

---

[3] "Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—'an alien who is an applicant for admission' and 'an alien seeking admission'—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Id.* at 1285.

[4] "We therefore find that an 'applicant for admission' is not necessarily 'seeking admission.' Because no Petitioner is alleged to be seeking admission or lawful entry into the United States, § 1225(b)(2)(A)'s mandatory detention scheme does not apply to them. And since '§ 1226 applies to aliens already present in the United States' and 'creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings,' Petitioners could have been detained pursuant to only § 1226." *Id.* at 732.

[5] "The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border." *Id.* at *7 (footnote omitted).

8

Furthermore, Respondents' legal reasoning cannot be reconciled with the government's treatment of Mr. Rahmonkulov, *i.e.*, arresting him in the interior of the United States pursuant to an administrative warrant that explicitly authorized his detention under § 1226 and initiating full removal proceedings. Given the government's treatment of Mr. Rahmonkulov, it cannot plausibly now maintain that he is subject to § 1225(b)(2)(A) and therefore categorically ineligible for discretionary release. *See Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025) (citing *Patel v. Crowley*, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

The facts here are also quite different from *Buenrostro-Mendez* where the court's analysis did not indicate that the petitioners were arrested pursuant to an administrative warrant and then served with a Notice to Appear for full removal proceedings. *See Buenrostro-Mendez*, 166 F.4th at 500 ("DHS encountered each petitioner in 2025, and, upon inspection, immigration officers determined that each was inadmissible as an alien present in the United States without having been admitted or paroled . . .  DHS commenced removal proceedings under 8 U.S.C. § 1229a against both petitioners, directing that they be detained under 8 U.S.C. § 1225(b)(2)(A) for the duration of those proceedings."). In *Avila*, the petitioner was served with a Notice to Appear, but the record is silent as to whether he was arrested pursuant to an administrative warrant. *See* 170 F.4th at 1132. In contrast, Mr. Rahmonkulov was served with an administrative warrant that authorized federal agents to detain him pursuant

9

to § 1226. *Buenrostro-Mendez* and *Avila* therefore do not necessarily apply to the facts here.

In sum, the record demonstrates that Mr. Rahmonkulov's detention is authorized only by § 1226(a), entitling him to consideration of bond.

## C.    Scope of Relief

Mr. Rahmonkulov is eligible for release on bond under § 1226(a), and he has not received a bond hearing. His continued detention without a bond hearing therefore violates "the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984).

Mr. Rahmonkulov asks for immediate release from custody. Immediate release is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). The Court has found that Mr. Rahmonkulov is subject to § 1226(a), which allows the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Rahmonkulov's custody is therefore not unlawful because of the very fact that he is detained. Rather, his custody is unlawful because he has not received the bond hearing that the law requires.

As an alternative to immediate release, Mr. Rahmonkulov asks the Court to direct the immigration judge assigned to his case to place on the Government the burden of justifying, by clear and convincing evidence of dangerousness or

10

flight risk, Mr. Rahmonkulov's continued detention. Dkt. 1 at 13. This request is premature. The Court has ordered Respondents to either provide Mr. Rahmonkulov with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations or release him. If Mr. Rahmonkulov is not released after a bond hearing and believes that his hearing was deficient thereby making his continued detention unlawful, he may file a post-judgment motion raising such claims.

## D.      Remaining Claim

Because the Court has found that Mr. Rahmonkulov's detention violates the INA, it does not reach his arguments that his detention violates the Fifth Amendment. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

## IV. Conclusion

The petition for a writ of habeas corpus is **granted** insofar as the respondents will have **ten days**[6] to either (1) provide Mr. Rahmonkulov with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations, or (2) release him from detention under reasonable conditions of supervision. Respondents must notify Mr. Rahmonkulov's counsel of the setting of any bond hearing.  Respondents must file documentation

---

[6] This deadline may be modified without need for Court involvement upon agreement by Mr. Leyva Frometa and the federal respondents.

certifying that they have either provided the bond hearing or released Mr. Rahmonkulov within **two days** after the hearing or his release, whichever is applicable.

The petition is **denied** to the extent it seeks immediate release or a specific burden of proof at the hearing.

The **clerk is directed** to enter **final judgment**.

**SO ORDERED.**

Date: 7/7/2026

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

12